FILED

2010 JUN 15  AM 8: 00

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

BY:_____

1 | MORGAN, LEWIS & BOCKIUS LLP
2 | CARRIE A. GONELL, SBN 257163
  | JOHN D. HAYASHI, SBN 211077
3 | 5 Park Plaza, Suite 1750
  | Irvine, CA  92614
  | Tel:  949.399.7000
4 | Fax:  949.399.7001
5 | e-mail: cgonell@morganlewis.com
  |         jhayashi@morganlewis.com

6 | Attorneys for Defendant
7 | JPMORGAN CHASE BANK, N.A.

8 |            UNITED STATES DISTRICT COURT

9 |            CENTRAL DISTRICT OF CALIFORNIA

10 |

11 | Benjamin Paparella, individually and     Case No. 10-CV- 841 AG (MLGX)
   | on behalf of other members of the
12 | general public similarly situated,
   |                                          **DEFENDANT JPMORGAN CHASE**
13 |              Plaintiff,                   **BANK, N.A.'S NOTICE OF REMOVAL**
   |                                          **TO THE UNITED STATES DISTRICT**
14 |         vs.                              **COURT FOR THE CENTRAL**
   |                                          **DISTRICT OF CALIFORNIA**
15 | JPMorgan Chase Bank, National
   | Association and DOES 1 through 50,        Diversity Jurisdiction Under The Class
16 | inclusive,                               Action Fairness Act
17 |              Defendant.                   [28 U.S.C. §§ 1332, 1441, 1446 and 1453]

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |



# TABLE OF AUTHORITIES

**Page**

I.    SUMMARY OF THE COMPLAINT ............................................................. 1

II.   THE REMOVAL IS TIMELY ..................................................................... 1

III.  THIS COURT HAS ORIGINAL SUBJECT MATTER
      JURISDICTION ......................................................................................... 2

      A.    Diversity Exists Between The Parties .......................................... 2

            1.    Plaintiff and the Members of the Putative Class Are
                  Citizens of California ......................................................... 2

            2.    Defendant Is Not a Citizen of California ............................ 3

      B.    The Amount Plaintiff Places in Controversy Exceeds $5 Million ....... 3

            1.    Plaintiff's Third Cause of Action for Meal and Rest
                  Period Violations Puts into Controversy in Excess of $5
                  Million. ............................................................................... 7

            2.    Plaintiff's First and Second Causes of Action for Unpaid
                  Overtime Put Into Controversy Nearly $5 Million. ............ 9

            3.    Plaintiff's Fifth Cause of Action for Waiting Time
                  Penalties Puts Into Controversy In Excess of $500,000 ..... 9

            4.    The Complaint Also Seeks Recovery of Attorney's Fees ..... 10

            5.    The Amount in Controversy Is Satisfied for Diversity
                  Jurisdiction Purposes ......................................................... 11

IV.   VENUE ..................................................................................................... 12

V.    NOTICE .................................................................................................... 12

VI.   CONCLUSION ......................................................................................... 12

# TABLE OF AUTHORITIES

**Page**

## CASES

*Behrazfar v. Unisys Corp.*, 687 F. Supp. 2d 999 (C.D. Cal. 2009) .......................... 8

*De Aguilar v. Boeing Co.*, 47 F.3d 1404 (5th Cir. 1995) ......................................... 4

*Guglielmino v. McKee Foods Corp.*, 506 F.3d 696 (9th Cir. 2007)....................... 11

*Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993 (C.D. Cal. 2002)................................................................................... 4

*Korn v. Polo Ralph Lauren*, 536 F. Supp. 2d 1199 (E.D. Cal. 2008) ................. 5, 6

*Lowdermilk v. U.S. Bank, N.A.*, 479 F.3d 994 (9th Cir. 2007)................................. 4

*Muniz v. Pilot Travel Centers LLC*, No. CIV.S-07-0325 FCD EFB, 2007 WL. 1302504 (E.D. Cal. May 1, 2007) ................................................................. 8

*Murphy v. Kenneth Cole Productions*, 40 Cal. 4th 1094 (2007)............................. 7

*Nelson v. Bic USA, Inc.*, No. 07-cv-2367-LAB (RBB), 2008 WL. 906049 (S.D. Cal. Apr. 1, 2008)....................................................................................... 6

*Newcombe v. Adolf Coors Co.*, 157 F.3d 686 (9th Cir. 1998)................................. 3

*In re Quintus Securities Litigation*, 148 F. Supp. 2d 967 (N.D. Cal. 2001)........... 11

*Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982 (S.D. Cal. 2005) .................. 4

*Sanchez v. Wal-Mart Stores, Inc.*, No. No. Civ. S-06-cv-2573 DFL KJM, 2007 WL. 1345706 (E.D. Cal. May 8, 2007) .................................................... 10

*Scherer v. Equitable Life Assurance Society of the United States*, 347 F.3d 394 (2d Cir. 2003).............................................................................................. 4

*Wachovia Bank, NA v. Schmidt*, 546 U.S. 303 (2006) ............................................. 3

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

DEFENDANT'S NOTICE OF REMOVAL

# TABLE OF AUTHORITIES
**(continued)**

**Page**

**STATUTES**

28 U.S.C. § 1332 ..................................................................................... 1, 2, 3, 5

28 U.S.C. § 1441 ..................................................................................... 1, 3, 12

28 U.S.C. §§ 1446 .................................................................................. 1, 2, 12

Cal. Bus. & Prof. Code §§ 17200 *et seq* ............................................... 1, 5

Cal. Lab. Code § 203 .............................................................................. 1, 5, 9, 10

Cal. Lab. Code § 1194 ............................................................................ 5, 11

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

DEFENDANT'S NOTICE OF REMOVAL

1   **TO THE HONORABLE JUDGES OF THE UNITED STATES**
2   **DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA:**
3          PLEASE TAKE NOTICE THAT, pursuant to 28 U.S.C. §§ 1332, 1441, 1446
4   and 1453, Defendant JPMORGAN CHASE BANK, N.A. ("Defendant" or
5   "JPMC") hereby removes the above-entitled action from the Superior Court of the
6   State of California, in and for the County of Orange, to the United States District
7   Court for the Central District of California. Removal is based on the following
8   grounds:

9   **I.     SUMMARY OF THE COMPLAINT**
10         On or about May 5, 2010, Plaintiff Benjamin Paparella ("Plaintiff") filed a
11  putative class action complaint on behalf of himself and a putative class of
12  "business bankers" who work or worked for JPMC since September 25, 2008.
13  Plaintiff alleges that he, and members of the putative class he purports to represent,
14  were improperly denied overtime compensation (first and second causes of action),
15  were not provided meal or rest breaks (third cause of action), and were not paid all
16  compensation due upon termination (fifth cause of action). Plaintiff also asserts a
17  derivative claim for injunctive relief under California Bus. & Prof. Code §§ 17200
18  *et seq.* (fourth cause of action). Plaintiff's claims are based on allegations that he
19  and putative class members regularly worked more than 40 hours per week and/or 8
20  hours per day without receiving overtime compensation. *See* Complaint, attached
21  hereto as Exhibit A, ¶¶ 13, 23. Plaintiff further alleges that Defendant failed to
22  provide him and putative class members with meal and rest breaks. Ex. A ¶ 29.
23  Plaintiff further alleges that JPMC willfully failed to pay its former employees all
24  earned and unpaid wages (including overtime) upon termination, and therefore
25  seeks waiting time penalties pursuant to Labor Code § 203. Ex. A ¶ 34.

26  **II.    THE REMOVAL IS TIMELY**
27         This Notice of Removal is timely filed, pursuant to 28 U.S.C. § 1446(b),
28  because it is filed within thirty days from May 13, 2010, the date upon which JPMC

1   received service of Plaintiff's original Complaint and Summons.  No previous

2   Notice of Removal has been filed or made with this Court for the relief sought

3   herein.

4   **III.   THIS COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION**

5   This Court has original subject matter jurisdiction based on diversity of

6   citizenship under CAFA, because plaintiff is diverse from defendant and the

7   amount in controversy exceeds $5 million.  28 U.S.C. § 1332(d)(2).  Plaintiff brings

8   this action as a class action, and alleges that he is a citizen of California.  Ex. A,

9   Complaint ¶ 1.  Defendant is not a citizen of California, but is a citizen of Ohio.

10  *See* Ex. C, Articles of Association for JPMorgan Chase Bank, National Association.

11  In addition, Plaintiff's class claims, when aggregated for potential class members,

12  puts into controversy an amount in excess of $5 million.  Removal under diversity

13  jurisdiction is therefore proper pursuant to 28 U.S.C. §§ 1446 and 1453.

14  **A.   Diversity Exists Between The Parties**

15  The parties meet the diversity requirements of CAFA because Plaintiff is a

16  citizen of a different state from Defendant.  28 U.S.C. § 1332(d)(2)(A) (providing

17  that diversity under is met under CAFA where "any member of a class of plaintiffs

18  is a citizen of a State different from any defendant").  Diversity therefore exists

19  between the parties under CAFA.

20  1.   Plaintiff and the Members of the Putative Class Are Citizens of
     California

21  At the time Plaintiff filed this action, Plaintiff alleged that he "was a Business

22  Banker" for JPMC in California, and was "domiciled in the state of California."

23  Ex. A, Complaint ¶¶ 1, 4.  In addition, Defendant's records reflect that Plaintiff's

24  last known address was in California.  Ex. B, Harris Decl. ¶ 2.  For diversity

25  purposes, Plaintiff is therefore considered a citizen of California.

26

27

28

2.   Defendant Is Not a Citizen of California

For diversity determination purposes, Defendant is diverse from Plaintiff because Defendant is <u>not</u> a citizen of California.  JPMC is, and at all pertinent times was, a federally chartered national bank with Columbus, Ohio designated in its articles of association as the locus of its main office.  *See* Ex. C, Articles of Association for JPMorgan Chase Bank (As Amended June 30, 2008).

Pursuant to 28 U.S.C. § 1332 and 1348, and the United States Supreme Court's decision in *Wachovia Bank, NA v. Schmidt*, 546 U.S. 303, 307 (2006) (holding that national banks are "located," for diversity jurisdiction purposes, in the state designated in its articles of association as the locus of its main office), JPMC is "located," for diversity purposes, in Columbus, Ohio.

Although Plaintiff has named 50 fictitiously named "Doe" defendants, the citizenship of these "Doe" defendants is disregarded for purposes of removal.  28 U.S.C. § 1441(a); *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998) (for removal purposes, the citizenship of defendants sued under fictitious names shall be disregarded).

Accordingly, Defendant is not a resident of California for diversity jurisdiction purposes, and is therefore diverse from Plaintiff.

**B.    The Amount Plaintiff Places in Controversy Exceeds $5 Million**

Pursuant to CAFA, the amount in controversy component of diversity jurisdiction is satisfied when the aggregated claims of the individual members in a class action exceed the sum or value of $5 million.  *See* 28 U.S.C. § 1332(d)(6).  Furthermore, Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief.)."  Senate Judiciary Report, S. REP. 109-14, at 42.

1    The amount in controversy is determined at the time of removal and is to be

2    decided based on the allegations in the operative pleading. *Lowdermilk v. U.S.*

3    *Bank Nat'l Assoc.*, 479 F.3d 994, 994 (9th Cir. 2007).   Where a plaintiff alleges an

4    amount in controversy greater than the jurisdictional amount ($5 million), the

5    amount in controversy is presumptively satisfied. *Id.* at 998.  Where a plaintiff

6    alleges an amount in controversy less than the jurisdictional medium, <u>and there is</u>

7    <u>no evidence of bad faith</u>, a removing defendant must demonstrate that the amount

8    in controversy exceeds $5 million to a "legal certainty." *Id.* at 999.

9    In measuring the amount in controversy, the court must assume that the

10    allegations of the complaint are true and that a jury will return a verdict for the

11    plaintiff on all claims made in the complaint. *Kenneth Rothschild Trust v. Morgan*

12    *Stanley Dean Witter,* 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002).  The ultimate

13    inquiry is what amount is put "in controversy" by the plaintiff's complaint, not

14    what a defendant will actually owe. *See Rippee v. Boston Market Corp.*, 408 F.

15    Supp. 2d 982, 986 (S.D. Cal. 2005); *Scherer v. Equitable Life Assurance Society of*

16    *the United States*, 347 F.3d 394, 397-99 (2d Cir. 2003) (recognizing that the

17    ultimate or provable amount of damages is not what is considered when

18    determining the amount in controversy; rather, it is the amount put in controversy

19    by the plaintiff's complaint).

20    Here, Plaintiff's complaint contains boilerplate and conclusory allegations

21    that there are "less than 100 members in the proposed class" and that the amount in

22    controversy "does not exceed $5,000,000" for the class and "does not exceed

23    $75,000" for Plaintiff. Ex. A, ¶ 4.  These allegations, however, are nothing more

24    than a bad faith effort to evade federal jurisdiction and deprive JPMC of its right to

25    invoke federal jurisdiction under CAFA. *See De Aguilar v. Boeing Co.*, 47 F.3d

26    1404, 1410 (5th Cir. 1995) (evading federal jurisdiction through manipulative

27    pleading "is surely characterized as bad faith.").  Contrary to Plaintiff's allegations,

28    there are in fact nearly **four times** as many putative class members who held a

1   "business banker" or similar title during the class period compared to the number

2   claimed by Plaintiff in the Complaint. Ex. B, Harris Decl. ¶ 4 (estimating that there

3   are approximately 390 putative class members who hold or once held the "business

4   banker" or similar title in California).  Consequently, Plaintiff's bad faith

5   allegations, made with the intent of avoiding federal jurisdiction, should be given

6   no deference by the Court.

7       Although Defendants deny Plaintiff's factual allegations and deny that he or

8   the class that he purports to represent are entitled to the relief for which he has

9   prayed, Plaintiff's claims, when combined with the <u>actual</u> number of class members

10   in the putative class as set forth in 28 U.S.C. § 1332(d)(6), put into controversy an

11   amount that far exceeds the $5 million threshold.

12       Plaintiff seeks to represent a putative class of "[a]ll current and former

13   California based employees of JPMorgan Chase Bank, National Association, with

14   the title 'Business Banker' who worked at any time from September 25, 2008 up to

15   the time the class is certified." Ex. A, ¶ 14.  Plaintiff's Complaint alleges five

16   causes of action under the California Labor Code and Business & Professions

17   Code:  (1) alleged failure to pay overtime compensation pursuant to Labor Code

18   § 1194; (2) unfair business practices pursuant to Business & Professions Code

19   §§ 17200 *et seq.* for allegedly failing to pay overtime compensation; (3) unfair

20   business practices pursuant to Business & Professions Code §§ 17200 *et seq.* for

21   allegedly failing to provide meal and rest breaks; (4) injunctive and declaratory

22   relief pursuant to Business & Professions Code §§ 17200 *et seq* derived from the

23   alleged Labor Code violations; and (5) waiting time penalties pursuant to Labor

24   Code § 203.

25       A defendant seeking to invoke CAFA jurisdiction can establish the amount in

26   controversy by presenting evidence of the number of putative class members. *Korn*

27   *v. Polo Ralph Lauren*, 536 F. Supp. 2d 1199, 1206 (E.D. Cal. 2008) (denying

28   plaintiff's motion for remand).  The number of putative class claims can then be

1   multiplied by the damages alleged per claim to determine the amount in

2   controversy. *Id.*

3       In *Korn*, plaintiffs brought a class action alleging violations of California

4   Civil Code section 1747.08, which carries a maximum civil penalty of $1,000 per

5   claim.  To establish the $5 million amount in controversy for CAFA jurisdiction

6   purposes, the defendant offered evidence that more than 5,000 potential claims

7   (credit card transactions) took place during the class period.  The district court

8   found that multiplying the number of claims by the statutory penalty was sufficient

9   evidence to prove that the amount in controversy under CAFA was met.  *Id.*  In

10  addressing the defendant's evidentiary burden, the court held, "defendant need only

11  demonstrate that there are at least 5,001 putative class claims." *Id.*  Because the

12  5,001 putative class claims multiplied by the $1,000 statutory penalty resulted in an

13  amount in controversy greater than $5 million, the district court found the amount

14  in controversy satisfied, and denied plaintiff's motion to remand.[1]

15      As discussed below, aggregation of the claims of all putative class members

16  in this action puts well over $5 million into controversy.  Plaintiff's meal and rest

17  break claims alone put $6,110,923.08 into controversy, his overtime claims put an

18  ---

19  [1]    Even under the "legal certainty" standard (which should not apply given the bad faith allegations in the complaint), a removing party can establish an amount in

20  controversy satisfying the CAFA jurisdictional minimum by providing evidence of the actual number of putative class members and then multiplying that number by

21  damages and other relief available from plaintiff's claims.  In *Nelson v. Bic USA, Inc.*, No. No. 07-cv-2367-LAB (RBB), 2008 WL 906049 (S.D. Cal. Apr. 1, 2008),

22  the named plaintiff alleged that "under no scenario, is the total amount of damages that Plaintiff seeks in this action in excess of $4,999,000," and that "no putative

23  class member individually claims more than $10.00 in damages." *Id.* at *1 (internal quotations omitted).  Bic provided evidence that the class size, based on sales data

24  of Bic lighters, was in excess of 500,000 people. *Id.*  Multiplying the class size (500,000) by the individual amount in controversy alleged in the complaint ($10),

25  in addition to other relief, resulted in an amount in controversy that met the $5 million CAFA threshold. *Id.* at *4.

26      Here, applying the same principles demonstrates that the amount in controversy greatly exceeds the $5 million jurisdictional minimum.  Multiplying

27  the actual number of putative class members (390) by plaintiff's alleged individual claim ("not in excess of $75,000") results in an amount in controversy of

28  $29,250,00.00 (390 x $75,000 = $29,250,000.00).  Consequently, the amount in controversy has been satisfied.

1   additional $4,583,192.31, into controversy, and his waiting time penalty claims put

2   yet another $545,983.20 in controversy, for a total amount in controversy of

3   $11,240,098.59 – which does not even include the amount in controversy from

4   Plaintiff's injunctive relief claims and his attorney's fees.

5           1.     Plaintiff's Third Cause of Action for Meal and Rest Period

6                 Violations Puts into Controversy in Excess of $5 Million.

7        Plaintiff's Third Cause of Action alleges that JPMC systematically denied all

8   putative class members the opportunity to take meal or rest breaks in violation of

9   California law.  Ex. A, ¶¶ 28-30.  Under California law, employers must "provide"

10  their employees with a 30-minute, uninterrupted meal period after five hours of

11  work.  Wage Order 4-2001 § 11.  In addition, employers must "authorize and

12  permit" employees to take a 10-minute, uninterrupted rest period for every four

13  hours worked or major fraction thereof.  Wage Order 4-2001 § 12.  If an employer

14  fails to provide such breaks (as is alleged in Plaintiff's Complaint), then the

15  employer must pay the employee a premium wage equal to one hour of pay for each

16  missed break.  *Murphy v. Kenneth Cole Productions*, 40 Cal. 4th 1094 (2007).  The

17  one hour of premium pay is paid at the employee's regular hourly rate.  *Id.*

18       Taking Plaintiff's allegations to be true – that Plaintiff and putative class

19  members were not provided with meal and rest breaks – then the amount in

20  controversy arising from Plaintiff's meal and rest period claim exceeds the CAFA

21  threshold of $5 million.

22       If, as Plaintiff contends, putative class members were not provided with meal

23  and rest breaks, they would be entitled to one hour of premium pay for each missed

24  meal break and one hour of premium pay for each missed rest break per day.  Class

25  members typically work five ore more days a week, and work shifts longer than

26  five hours.  Harris Decl. ¶ 3.  Thus, taking as true Plaintiff's claim that JPMC did

27  not provide meal and rest breaks (as Plaintiff's Third Cause of Action alleges),

28  putative class members would be eligible for five hours of premium pay for missed

meal periods per week, and five hours of premium pay for missed rest periods per week, for a combined 10 hours of premium pay per week. *See Muniz v. Pilot Travel Centers LLC*, No. CIV.S-07-0325 FCD EFB, 2007 WL 1302504 (E.D. Cal. May 1, 2007) (where plaintiff does not allege facts specific to the circumstances of allegedly missed meal and/or rest periods, defendant may use 100% violation rate in calculating the amount in controversy).

During the class period, the approximately 390 members of the putative class worked at least 22,000 work weeks.  Multiplying the total number of class workweeks by the 10 missed meal/rest periods and by the average hourly rate of $36.11, results in an amount in controversy of $7,944,200.00 calculated as follows:

22,000 workweeks x 10 meal/rest premiums x $36.11 avg rate = **$7,944,200.00**

Although putative class members were employed by Defendant for more than an estimated 22,000 workweeks, the number of days they <u>actually</u> worked would be less than the full 22,000 workweeks when accounting for holidays, vacations, and other days off (when they would not have actually worked).  Here, when accounting for holidays, vacation, and other days off, members of the putative class typically worked at least 40 weeks per 52 week year. Harris Decl. ¶ 6.  Using 40 actual workweeks in a 52-week year has been found to be a "good faith" estimate "based on evidence" of the actual number of days employees worked when calculating the amount in controversy under CAFA. *Behrazfar v. Unisys Corp.*, 687 F. Supp. 2d 999, 1004 (C.D. Cal. 2009) (calculating amount in controversy based on 40 workweeks per year was "relatively conservative, made in good faith, and based on evidence.")  When accounting for a 40 workweek year, the amount in controversy is **$6,110,923.08**, which amount exceeds the CAFA threshold ($7,944,200 x 40/52 = $6,110,923.08).

Accordingly, when multiplying the <u>actual</u> number of putative class members times their potential recovery, and accounting for days not actually worked, results in an amount in controversy that by itself exceeds the CAFA minimum.

2.    Plaintiff's First and Second Causes of Action for Unpaid
Overtime Put Into Controversy Nearly $5 Million.

Plaintiff's First and Second Causes of Action allege that JPMC systematically failed to pay overtime compensation to putative class members in violation of California law.  Ex. A, ¶¶ 13, 21-27.  Plaintiff alleges that he and all putative class members "regularly work more than 40 hours per week and/or 8 hours per day."  Ex. A, ¶ 23.

Taking these allegations to be true, then the amount in controversy arising from Plaintiff's overtime claim in excess of $5 million.  If, as Plaintiff contends, putative class members regularly worked more than 40 hours per week and/or 8 hours per day, then they would arguably be entitled to at least one hour of overtime pay for each day worked, which was typically five days or more per week.  Harris Decl. ¶ 3.  Multiplying the 22,000 total number of class workweeks by 5 hours of unpaid overtime per week and by the average overtime rate of $54.17 (which is 1.5 times the regular rate of $36.11) results in an amount in controversy of approximately $5,958,150, calculated as follows:

22,000 workweeks x 5 OT hours per week x $54.17 OT rate = **$5,958,150**

As discussed above, when accounting for the fact that putative class members typically worked a minimum of 40 weeks out of a 52 week year, the amount in controversy would be **$4,583,192.31** ($5,958,150.00 x 40/52 = $4,583,192.31).

Accordingly, when multiplying the <u>actual</u> number of putative class members times their potential overtime recovery, and accounting for days not actually worked, results in an amount in controversy of nearly $5 million.

3.    Plaintiff's Fifth Cause of Action for Waiting Time Penalties
Puts Into Controversy In Excess of $500,000

Plaintiff's Fifth Cause of Action, for waiting time penalties under California Labor Code § 203, creates an additional amount in controversy in excess of $500,000.

1   In Plaintiff's fifth cause of action for penalties pursuant to Labor Code § 203,

2   Plaintiff alleges that Defendant failed to pay Plaintiff and members of the putative

3   class all earned and unpaid wages.  Ex. A, Complaint ¶ 34.  He seeks waiting time

4   penalties equal to their daily wage for 30 days.  *Id.* and Prayer for Relief ¶ 2.  Given

5   that Plaintiff defines the putative class as "[a]ll current and former California based

6   employees of JPMorgan Chase...who worked at any time from September 25,

7   2008," then all former JPMC employees who held a business banker or similar

8   position in California would be eligible for waiting time penalties.  Ex. A,

9   Complaint ¶ 2.

10  Assuming Plaintiff's allegations to be true, Plaintiff's fifth cause of action

11  puts into controversy more than $500,000.  During the period since September 25,

12  2008, 63 JPMC employees in California who held a Business Banker or similar title

13  ended their employment with JPMC.  Ex. B, Harris Decl. ¶ 4.  Based on their

14  average annual compensation, the average equivalent hourly rate for the putative

15  class is approximately $36.11 per hour.  Ex. B, Harris Decl. ¶ 5.

16  Based on these figures, Plaintiff has put in controversy approximately

17  $545,983.20, calculated as follows:

18

19  63 former employees x $36.11 avg. hourly wage x 8 hours/day x 30 days =

20  **$545,983.20**

21  Thus, the amount in controversy as pled in Plaintiff's fifth cause of action

22  alone is **$545,983.20**.

23  4.   The Complaint Also Seeks Recovery of Attorney's Fees

24  The Complaint also seeks attorneys' fees.  Ex. A, Complaint (Prayer for

25  Relief) ¶ 2.  Attorneys' fees are properly included in determining the amount in

26  controversy.  *Sanchez v. Wal-Mart Stores, Inc.*, No. No. Civ. S-06-cv-2573 DFL

27  KJM, 2007 WL 1345706, *2 (E.D. Cal. May 8, 2007) ("Attorney's fees, if

28

1  authorized by statute or contract, are also part of the calculation").  Assuming

2  Plaintiff can recover on his allegations, under his theory of the case he would

3  undoubtedly argue that he would be entitled to receive attorneys' fees in an amount

4  equal to a significant percentage of the total recovery. *Guglielmino v. McKee*

5  *Foods Corp.*, 506 F.3d 696, 698 (9th Cir. 2007) (describing measurement of

6  attorneys' fees at 12.5% of economic damages for violations of wage provisions of

7  California Labor Code in removal context as "conservative "); *cf. In re Quintus*

8  *Securities Litigation*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (noting in the class

9  action settlement context, that the benchmark for setting attorneys' fees is 25

10  percent of the common fund).

11       Labor Code § 1194 provides that a plaintiff may recover reasonable

12  attorney's fees incurred in enforcing a claim under this section.  Cal. Lab. Code

13  § 1194.  Thus, adding these statutory attorney's fees further increases Plaintiff's

14  alleged amount in controversy in excess of $5 million.

15              5.     The Amount in Controversy Is Satisfied for Diversity
                       Jurisdiction Purposes
16

17       Thus, although Defendants deny Plaintiff's allegations and deny that he or

18  the class that he purports to represent are entitled to the relief for which he has

19  prayed, based on Plaintiff's allegations, theories, and prayer for relief, he has placed

20  at least $11,240,098.59 in controversy ($6,110,923.08 for meal and rest breaks,

21  $4,583,192.31 for overtime, and $545,983.20 for waiting time penalties), plus his

22  attorneys' fees and the value of his injunctive relief claims, which far exceeds the

23  $5 million threshold set forth under CAFA.  Because there is diversity between the

24  parties and the amount in controversy threshold has been satisfied in this Action,

25  this Court has original subject matter jurisdiction to hear this dispute.

26

27

28

## IV.   VENUE

This action was originally filed in the Superior Court for the County of Orange.  Venue is therefore proper in this district, pursuant to 28 U.S.C. § 1441(a), because it encompasses the county in which this action has been pending.

## V.   NOTICE

Defendants will promptly serve this Notice of Removal on all parties and will promptly file a copy of this Notice of Removal with the clerk of the state court in which the action is pending, as required under 28 U.S.C. § 1446(d).

A true and correct copy of Plaintiff's original Complaint is attached hereto as Exhibit A.

A true and correct copy of the Harris Declaration in support of removal is attached hereto as Exhibit B.

A true and correct copy of JPMC's Articles of Association, As Amended June 30, 2008, is attached hereto as Exhibit C.

On June 14, 2010, JPMC electronically-filed its Answer with the Superior Court in and for the County of Orange.  Conformed copies of the Answer and other state court documents will be filed as a supplement to this petition as soon as conformed copies are available.

## VI.   CONCLUSION

Based on the foregoing, Defendant respectfully requests that this action be removed to this Court.  If any question arises as to the propriety of the removal of this action, Defendant requests the opportunity to present a brief and oral argument in support of its position that this case is removable

1

Dated:   June 14, 2010

2

MORGAN, LEWIS & BOCKIUS LLP

3

By _____

4

Carrie A. Gonell
Attorneys for Defendant
JPMORGAN CHASE BANK, N.A.,
improperly named in the Complaint
as J.P. MORGAN CHASE & CO.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

# EXHIBIT A



COPY

Edward J. Wynne      (SBN #165819)
ewynne@wynnelawfirm.com
J.E.B. Pickett       (SBN #154294)
Jebpickett@wynnelawfirm.com
WYNNE LAW FIRM
100 Drakes Landing Road, Suite 275
Greenbrae, CA 94904
Tel. 415-461-6400
Fax. 415-461-3900

Plaintiff's Counsel

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

MAY 05 2010

ALAN CARLSON, Clerk of the Court

BY _____ J. HAINES _____ ,DEPUTY

*(vertical left margin text)* THIS CASE IS SUBJECT TO MANDATORY ELECTRONIC FILING PURSUANT TO RULE 308 OF THE LOCAL RULES OF THE SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE

## SUPERIOR COURT OF CALIFORNIA

## ORANGE COUNTY

| | |
|---|---|
| Benjamin Paparella, individually and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>JPMorgan Chase Bank, National Association and DOES 1 though 50, inclusive,<br><br>Defendant. | Case No.:<br><br>30-2010<br>**0 0 3 7 0 1 4 6**<br><br>**COMPLAINT**<br><br>**[CLASS ACTION]**<br><br>1. Labor Code § 1194<br>2. B&P § 17200 - Overtime<br>3. B&P § 17200 – Meal and Rest Breaks<br>4. B&P 17200 – Injunction/Dec. Relief<br>5. Labor Code § 203<br><br>**JUDGE RONALD L. BAUER**<br>**DEPT. CX103** |

1

## GENERAL ALLEGATIONS

1.    Plaintiff Benjamin Paparella was a Business Banker for defendant JPMorgan Chase Bank, National Association ("Chase Bank") in the state of California within the last three years of the filing of the original complaint in this action.

2.    Defendant Chase Bank is a wholly owned subsidiary of JPMorgan Chase &Co. Defendant is a bank that owns and operates retail banks in this judicial district and in the state of California.  Defendant has employees with the title "Business Banker."

3.    Venue is proper in Orange County as at least some of the acts complained of herein occurred in Orange County as Defendant owns and operates banks in Orange County.

4.    At all times herein mentioned, Plaintiff and the class identified herein worked as employees for Defendant in salaried positions in Defendant's branch and retail locations under the business name "Chase."  At all times herein mentioned, Plaintiff and the class have been, and continue to be, domiciled in the state of California.  Plaintiff is informed and believes and thereon alleges that there are less than 100 members in the proposed class.  The amount in controversy including damages, restitution, attorney fees, penalties, and value of injunctive relief sought does not exceed $5,000,000.  The amount in controversy for the named plaintiff including damages, restitution, pro rata share of attorney fees, penalties, and pro rata value of injunctive relief sought does not exceed $75,000.

5.    At all times herein mentioned Defendant and Does 1 through 50 are and were corporations, business entities, individuals and partnerships, licensed to do business and actually doing business in the State of California, Orange County.  Defendant owns and operates an industry, business and establishment in a number of separate geographic locations within the State of California, including within Orange County, for the purpose of selling banking services and products.  As such, and based upon all the facts and circumstances incident to Defendant's business in California, Defendant is subject to California Labor Code §§ 1194 *et seq.*, California Business and Professions Code § 17200 *et seq.*, (Unfair Practices Act) and the applicable Industrial Welfare Commission Wage Orders.

6.    Plaintiff does not know the true names or capacities, whether individual, partner or corporate, of the Defendants sued herein as DOES 1 through 50, inclusive, and for that reason, said Defendants are sued under such fictitious names, and Plaintiff prays leave to amend this complaint when the true names and capacities are known. Each of said fictitious Defendants was responsible in some way for the matters alleged herein and proximately caused Plaintiff and members of the class to be subject to the illegal employment practices, wrongs and injuries complained of herein.

7.    At all times herein mentioned, each of said Defendants participated in the doing of the acts hereinafter alleged to have been done by the named Defendant; and furthermore, the Defendants, and each of them, were the agents, servants and employees of each of the other Defendants, as well as the agents of all Defendants, and at all times herein mentioned, were acting within the course and scope of said agency and employment.

8.    At all times herein mentioned, Defendants, and each of them, were members of, and engaged in, a joint venture, partnership and common enterprise, and acting within the course and scope of, and in pursuance of, said joint venture, partnership and common enterprise.

9.    At all times herein mentioned, the acts and omissions of various Defendants, and each of them, concurred and contributed to the various acts and omissions of each and all of the other Defendants in proximately causing the injuries and damages as herein alleged.

10.    At all times herein mentioned, Defendants, and each of them, ratified each and every act or omission complained of herein.  At all times herein mentioned, the Defendants, and each of them, aided and abetted the acts and omissions of each and all of the other Defendants in proximately causing the damages as herein alleged.  Further, at all times mentioned herein, the wage and hour related compensation policies of Defendant's branch locations in California are and were dictated by, controlled by, and ratified by the Defendants herein and each of them.

## FACTUAL ALLEGATIONS

11.   Pursuant to California Labor Code §§ 218, 218.6, and 1194, Plaintiff may bring a civil action for overtime wages directly against the employer without first filing a claim with the California Division of Labor Standards Enforcement and may recover such wages, together with interest thereon, penalties, attorney fees and costs. ....

12.   On or about September 25, 2008, JPMorgan Chase & Co. purchased the deposits, assets and certain liabilities of Washington Mutual Bank's banking operations from the Federal Deposit Insurance Corporation.  Washington Mutual Bank had branch locations in California.  After the purchase, JPMorgan Chase & Co. began operating the former Washington Mutual bank branches under the name "Chase."

13.   Plaintiff and all members of the class identified herein were regularly scheduled as a matter of uniform company policy to work and in fact worked as salaried bank employees in excess of eight hours per workday and/or in excess of forty hours per workweek without receiving straight time or overtime compensation for such overtime hours worked in violation of California Labor Code § 1194 and California Industrial Welfare Commission Wage Order 4-2001.  Defendant has failed to meet the requirements for establishing the exemption because all class members (a) regularly spent more than 50% of their time performing nonexempt work, (b) did not customarily and regularly exercise discretion and independent judgment on matters of significance, (c) did not have the authority to hire or fire or make meaningful recommendations regarding same, (d) did not customarily and regularly supervise at least two employees or the equivalent, (e) did not perform work directly related to the management policies or the general business operations of Defendant or Defendant's customers, (f) did perform nonexempt production and/or sales work a majority of their time (i.e., in excess of 50%) consistent with Defendant's realistic expectations, (g) did not customarily and regularly spend more than 50% of their time away from the Defendant's places of business selling or obtaining orders or contracts, and (h) did not earn more than 50% of their compensation in a

bona fide commission plan. Thus, Plaintiff and the class members were not exempt from the overtime requirements of California law for these reasons.

### CLASS ALLEGATIONS

14.    This complaint is brought by Plaintiff pursuant to California Code of Civil Procedure § 382 on behalf of a class. All claims alleged herein arise under California law for which Plaintiff seeks relief authorized under California law. The class is comprised of, and defined as:

> All current and former California based employees of JPMorgan Chase Bank, National Association, with the title "Business Banker" who worked at any time from September 25, 2008 up to the time the class is certified.

15.    The members of the classes are so numerous that joinder of all members is impracticable.   The exact number of the members of the classes can be determined by reviewing Defendant's records.

16.    Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel that is experienced and competent in class action and employment litigation. Plaintiff has no interests that are contrary to, or in conflict with, members of the Class.

17.    A class action suit, such as the instant one, is superior to other available means for fair and efficient adjudication of this lawsuit. The damages suffered by individual members of the Class may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the Class to individually seek redress for the wrongs done to them.

18.    A class action is, therefore, superior to other available methods for the fair and efficient adjudication of the controversy. Absent these actions, the members of the Class likely will not obtain redress of their injuries and Defendant will retain the proceeds of its violations of California law.

19.  -  Even if any member of the Class could afford individual litigation against Defendant, it would be unduly burdensome to the judicial system. Concentrating this litigation

in one forum will promote judicial economy and parity among the claims of individual members of the Class and provide for judicial consistency.

20.   There is a well-defined community of interest in the questions of law and fact affecting the Class as a whole.   Questions of law and fact common to each of the Class predominate over any questions affecting solely individual members of the action.   Among the common questions of law and fact are:

a.   Whether the class has been properly classified as exempt by Defendant from overtime compensation;

b.   Whether the class is expected to regularly work hours in excess of forty per week and/or in excess of eight hours per day;

c.   How class is compensated; and,

d.   Whether the class has sustained damages and, if so, what the proper measure of damages is.

### FIRST CAUSE OF ACTION

### (Labor Code § 1194)

21.   Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

22.   California Wage Order 4-2001, 8 C.C.R. § 11040, and Labor Code § 510 state that an employee must be paid overtime, equal to 1.5 times the employee's regular rate of pay, for all hours worked in excess of 40 per week and/or 8 per day.

23.   Class members regularly work more than 40 hours per week and/or 8 hours per day but are not paid overtime.

24.   Class members do not meet any of the tests for exempt status under the California Wage Orders and/or the California Labor Code.

6

## SECOND CAUSE OF ACTION

### (Bus. & Prof. Code § 17203 – Overtime)

25.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

26.     Defendant has committed an act of unfair competition under California Business & Professions Code § 17200 *et seq.* by not paying the required state law overtime pay to the members of the class.

27.     Pursuant to Bus. & Prof. Code § 17203, Plaintiff requests an order requiring Defendant to make restitution of all overtime wages due to the class.

## THIRD CAUSE OF ACTION

### (Bus. & Prof. Code § 17203 – Meal and Rest Breaks)

28.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

29.     In violation of Labor Code § 512 and IWC Wage Order 4-2001, Defendant failed to provide and document meal and rest period breaks for the class in the number, length and manner as required.  At no time has the Plaintiff or the class entered into any written agreement with Defendant expressly or impliedly waiving their right to their meal and rest breaks.  Plaintiff and the class have been injured by Defendant's failure to comply with Labor Code § 512 and IWC Wage Order 4-2001 and are thus entitled to the wages set forth in Labor Code § 226.7.

30.     Pursuant to Bus. & Prof. Code § 17203, Plaintiff requests Defendant make restitution of all wages due to the class under this Third Cause of Action.

## FOURTH CAUSE OF ACTION

### (Bus. & Prof. Code § 17203 – Injunction and Declaratory Relief)

31.     Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

32.    Plaintiff, and all persons similarly situated, are further entitled to and do seek a both a declaration that the above-described business practices are unfair, unlawful and/or fraudulent and injunctive relief restraining Defendant from engaging in any of such business practices in the future. Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will cause great and irreparable injury to all members of the class in that the Defendant will continue to violate California law, represented by labor statutes and IWC Wage Orders, unless specifically ordered to comply with same.   This expectation of future violations will require current and future employees to repeatedly and continuously seek legal redress in order to gain compensation to which they are entitled under California law. Plaintiff has no other adequate remedy at law to insure future compliance with the California labor laws and wage orders alleged to have been violated herein.

## FIFTH CAUSE OF ACTION

### (Labor Code § 203)

33.    Plaintiff incorporates the allegations contained in the previous paragraphs of this Complaint as if fully set forth herein.

34.    Plaintiff and the class were discharged by Defendant or voluntarily quit, and did not have a written contract for employment.  The Defendant, in violation of California Labor Code §§ 201 and 202 *et seq*. had a consistent and uniform policy, practice and procedure of willfully failing to pay the earned and unpaid wages of all such former employees.   The Defendant has willfully failed to pay the earned and unpaid wages of such individuals, including, but not limited to, straight time, overtime, vacation time, meal and rest wages, and other wages earned and remaining uncompensated according to amendment or proof.  Plaintiff and the class did not secret or absent themselves from Defendant nor refuse to accept the earned and unpaid wages from Defendant.  Accordingly, Defendant is liable for waiting time penalties for the unpaid wages pursuant to California Labor Code § 203.

## PRAYER FOR RELIEF

WHEREFORE, representative Plaintiff, on his own behalf and on behalf of the members of the class, prays for judgment as follows:

1.     For an order certifying the proposed class;

2.     For damages, restitution, attorney fees under the Labor Code and/or CCP § 1021.5, penalties per Labor Code § 203, and injunctive relief, as the amount in controversy not in excess of $5,000,000 for the class and not in excess of $75,000 for the named plaintiff; and,

3.     For prejudgment interest.


Dated: May 4, 2010                                    WYNNE LAW FIRM


                                          By: _____
                                             Edward J. Wynne
                                             100 Drakes Landing Road, Suite 275
                                             Greenbrae, CA 94904
                                             Telephone: 415-461-6400
                                             Facsimile: 415-461-3900
                                             *Counsel for Plaintiff*

---

9

# EXHIBIT B

1   MORGAN, LEWIS & BOCKIUS LLP
    CARRIE A. GONELL, SBN 257163
2   JOHN D. HAYASHI, SBN 211077
    5 Park Plaza, Suite 1750
3   Irvine, CA 92614
    Tel: 949.399.7000
4   Fax: 949.399.7001
    e-mail: cgonell@morganlewis.com
5            jhayashi@morganlewis.com

6   Attorneys for Defendant
    JPMORGAN CHASE BANK, N.A.
7

8               UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11  Benjamin Paparella, individually and       Case No.
    on behalf of other members of the
12  general public similarly situated,

13              Plaintiff,                       DECLARATION OF TIFFANY A.
                                                 HARRIS IN SUPPORT OF
14        vs.                                    DEFENDANT JPMORGAN CHASE
                                                 BANK, N.A.'S NOTICE OF REMOVAL
15  JPMorgan Chase Bank, National
    Association and DOES 1 through 50,
16  inclusive,

17              Defendant.

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP          DB1/64991319                                      DECLARATION OF
ATTORNEYS AT LAW                                                       TIFFANY A. HARRIS
IRVINE

I, Tiffany A. Harris, declare as follows:

1. I currently serve as Vice President of Human Resources for Defendant JPMorgan Chase Bank, N.A. ("Defendant" or "JPMC"). I have personal knowledge of the facts stated herein, and if called and sworn as a witness, I could and would testify competently to these facts.

2. According to JPMC records, while employed at JPMC, Plaintiff Benjamin Paparella's ("Plaintiff") last known address was in California.

3. Employees holding a business banker or similar title typically work five or more days a week, and their work days are typically longer than five hours.

4. According to JPMC records, since September 25, 2008, approximately 390 current and former employees have held a business banker or similar title in California. Since September 25, 2008, approximately 63 have ended their employment with JPMC.

5. According to JPMC records, the approximate average annual total compensation for persons employed in these positions in California was $75,102.98. This is equivalent to approximately $36.11 per hour. In addition, the approximately 390 employees holding these positions worked an approximate cumulative total of greater than 22,000 workweeks during the period between September 25, 2008 and June 1, 2010.

6. When accounting for holidays, vacation, and other time off, employees holding a business banker or similar title typically work 40 or more weeks per year.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct. Executed this 14th day of June 2010 at New Hyde Park, New York.

Tiffany A. Harris

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
IRVINE

1

DECLARATION OF
TIFFANY A. HARRIS

EXHIBIT B, PAGE 11

# EXHIBIT C

# JPMORGAN CHASE BANK, NATIONAL ASSOCIATION

## CHARTER NO. 8

## ARTICLES OF ASSOCIATION

(As Amended June 30, 2008)

For the purpose of organizing an Association to perform any lawful activities of national banks, the undersigned do enter into the following Articles of Association:

FIRST.  The title of this Association shall be JPMorgan Chase Bank, National Association (the "Association").

SECOND.  The main office of the Association shall be in the City of Columbus, County of Delaware, State of Ohio.  The general business of the Association shall be conducted at its main office and its branches.

THIRD.  The board of directors of this Association shall consist of not less than five nor more than twenty-five persons, the exact number to be fixed and determined from time to time by resolution of a majority of the full board of directors or by resolution of a majority of the shareholders at any annual or special meeting thereof.

FOURTH.  There shall be an annual meeting of the shareholders to elect directors and transact whatever other business may be brought before the meeting.  It shall be held at the main office or any other convenient place and on such date as the board of directors may designate.

FIFTH.  The authorized amount of capital stock of this Association shall be $1,815,000,000, divided into 150,000,000 shares of common stock of the par value of $12 each and 15,000,000 shares of preferred stock of the par value of $1 each; but said capital stock may be increased or decreased from time to time, according to the provisions of the laws of the United States.

In the event of any such increase in the capital stock of this Association by the sale of additional shares or the distribution of additional shares as a stock dividend, each shareholder of this Association (unless otherwise provided by the shareholders' vote or votes authorizing the increase) shall be entitled, in proportion to the number of shares of said capital stock owned by him before such increase, to proportionate rights in respect of such additional shares as follows: (1) to the extent that such shareholder's proportionate right in respect of such additional shares shall embrace one or more whole shares of such additional shares, to receive (a) in the case of a sale, a transferable warrant entitling the holder to subscribe, within the specified subscription period, for such one or more whole shares of such additional shares or (b) in the case of a stock dividend, a certificate evidencing such one or more whole shares of such additional shares; and

(2) to the extent that such shareholder's proportionate right in respect of such additional shares shall embrace a fraction of a share, to receive (a) in the case of a sale, a fractional subscription warrant, conditioned that it shall be void unless, within the specified subscription period, it is combined with other such fractional subscription warrants in the aggregate entitling the holder thereof to subscribe for a whole share or whole shares of such additional shares and such subscription is completed by such holder of such combined fractional warrants or (b) in the case of a stock dividend, a fractional warrant which shall not represent or entitle the holder thereof to any of the privileges of a shareholder of this Association but may be combined with other such fractional warrants in the aggregate entitling the holder thereof to exchange them for a whole share or whole shares of such additional shares and conditioned that the holder exchanging such combined fractional warrants for such whole share or whole shares of such additional shares shall receive any dividends applicable to such whole share or whole shares declared after the date of such fractional warrants and payable in respect of such whole share or whole shares at the time of such exchange.

In the event of an increase in the capital stock of this Association in pursuance of a statutory consolidation to which this Association may be a party, the additional shares shall be issued in such a manner as the contract or plan of consolidation may provide, pursuant to and in contemplation of the statute under which said consolidation is effected.

In the event of an increase in the capital stock of this Association in pursuance of a plan or contract (other than in the case of a statutory consolidation) for the acquisition by this Association of the assets, in whole or in part, and the good will of another banking institution or banker, the additional shares shall be subscribed for by or issued to any persons, firms, trustees or corporations, whether or not shareholders of this Association, as, in its discretion in the execution of such plan or contract, the Board of Directors may approve.

The Association, at any time and from time to time, may authorize and issue debt obligations, whether or not subordinated, without the approval of the shareholders.

SIXTH.   The Board of Directors shall appoint one of its members President of this Association, who shall be Chairman of the Board; but the Board of Directors may appoint a director, in lieu of the President, to be Chairman of the Board, who shall perform such duties as may be designated by the Board of Directors.   The Board of Directors shall have the power to appoint one or more Vice Presidents; to appoint a Cashier and such other officers as may be required to transact the business of this Association; to fix the salaries to be paid to all officers of this Association; and to dismiss such officers, or any of them; but the Board of Directors may delegate the authority to exercise such powers of appointment, salary determination and dismissal.

The Board of Directors shall have the power to define the duties of officers and employees of this Association, to require bonds from them, and to fix the penalty thereof; to regulate the manner in which directors shall be elected or appointed, and to appoint judges of election; in the event of an increase of the capital stock of this Association to regulate the manner in which such increase shall be made; to make all by-laws that it may be lawful for them to make for the general regulation of the business of this Association and the management of its affairs; and generally to do and perform all acts that it may be lawful for a Board of Directors to do and perform.

SEVENTH.   The board of directors shall have the power to change the location of the main office to any other location permitted under applicable law, without the approval of the shareholders, and shall have the power to establish or change the location of any branch or branches of the Association to any other location permitted under applicable law, without the approval of the shareholders subject to such limitations as from time to time may be provided by law.

EIGHTH.   The corporate existence of this Association shall continue until termination according to the laws of the United States.

NINTH.   These Articles of Association may be amended at any regular or special meeting of the shareholders by the affirmative vote of the holders of a majority of the stock of this Association, unless the vote of the holders of a greater amount of stock is required by law, and in that case by the vote of the holders of such greater amount.

In witness whereof, we have hereunto set our hands as of June 30, 2008.


By /s/ James Dimon
James Dimon


By /s/ Frank J. Bisignano
Frank J. Bisignano


By /s/ Steven D. Black
Steven D. Black


By /s/ Michael J. Cavanagh
Michael J. Cavanagh


By /s/ Charles W. Scharf
Charles W. Scharf


By /s/ James E. Staley
James E. Staley

## PROOF OF SERVICE

I am a resident of the State of California, County of Orange; I am over the age of eighteen years and not a party to the within action; my business address is 5 Park Plaza, Suite 1750, Irvine, California 92614.

On June 14, 2010, I served on the interested parties in this action the within document(s) entitled:

**DEFENDANT JPMORGAN CHASE BANK, N.A.'S NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA**

[X]  **BY MAIL:  (C.C.P. § 1013(a))** - by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in the United States mail at Irvine, California addressed as set forth below.  I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

| | |
|---|---|
| Edward J. Wynne, Esq.<br>J.E.B. Pickett, Esq.<br>WYNNE LAW FIRM<br>100 Drakes Landing Road, Suite 275<br>Greenbrae, CA 94904<br>Telephone:  415.461.6400<br>Facsimile:  415.461.3900<br>ewynne@wynnelawfirm.com<br>Jebpickett@wynnelawfirm.com | Attorneys for Plaintiff BENJAMIN PAPARELLA |

[ X ]  **FEDERAL:**  I declare that I am employed in the office of a member of the Bar of this Court at whose direction this service was made.  Executed on June 14, 2010, at Irvine, California.

_____
Jojo Nghiem

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Andrew Guilford and the assigned discovery Magistrate Judge is Marc Goldman.

The case number on all documents filed with the Court should read as follows:

## SACV10- 841 AG (MLGx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

==================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [X] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)      NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☐)

Benjamin Paparella, individually and on behalf of other members of the general public similarly situated

**DEFENDANTS**

JPMorgan Chase Bank, National Association and DOES 1 through 50, inclusive

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Edward J. Wynne / J.E.B. Pickett
WYNNE LAW FIRM
100 Drakes Landing Road, Suite 275
Greenbrae, CA 94904
Telephone: 415.461.6400

Attorneys (If Known)

CARRIE A. GONELL / JOHN D. HAYASHI
MORGAN, LEWIS & BOCKIUS LLP
5 Park Plaza, Suite 1750
Irvine, CA 92614
Telephone 949.399.7000

---

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff

☐ 2 U.S. Government Defendant

☐ 3 Federal Question (U.S. Government Not a Party)

☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

---

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding   ☒ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

---

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☒ Yes ☐ No     **MONEY DEMANDED IN COMPLAINT: $** _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

28 U.S.C § 1332

---

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☒ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | FORFEITURE/ PENALTY | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury- Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury- Product Liability | ☐ 443 Housing/Acco- mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities - Employment | ☐ 630 Liquor Laws | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | IMMIGRATION | | ☐ 640 R.R. & Truck | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus- Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety/Health | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | ☐ 690 Other | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi- nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS - Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

---

**FOR OFFICE USE ONLY:** Case Number: SACV 10-841 AG (MLGx)

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a).   IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?   [X] No      [ ] Yes

If yes, list case number(s): _____

**VIII(b).   RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?   [X] No      [ ] Yes

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)    [ ]  A. Arise from the same or closely related transactions, happenings, or events; or

[ ]  B. Call for determination of the same or substantially related or similar questions of law and fact; or

[ ]  C. For other reasons would entail substantial duplication of labor if heard by different judges; or

[ ]  D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX.   VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.

[ ]  Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange | |

(b)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.

[ ]  Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Ohio |

(c)   List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Orange | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

**X.  SIGNATURE OF ATTORNEY (OR PRO PER):** _Carrie C_          Date June 14, 2010

CARRIE A. GONELL

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |

1

### PROOF OF SERVICE

2        I am a resident of the State of California, County of Orange; I am over the
age of eighteen years and not a party to the within action; my business address is 5

3    Park Plaza, Suite 1750, Irvine, California 92614.

4        On June 14, 2010, I served on the interested parties in this action the within
document(s) entitled:

5

6    ### CIVIL COVER SHEET

7    ☒    **BY MAIL:  (C.C.P. § 1013(a))** - by placing the document(s) listed
above in a sealed envelope with postage thereon fully prepaid, in the

8    United States mail at Irvine, California addressed as set forth below.  I
am readily familiar with the firm's practice of collection and processing

9    correspondence for mailing.  Under that practice it would be deposited
with the U.S. Postal Service on that same day with postage thereon

10   fully prepaid in the ordinary course of business.  I am aware that on
motion of the party served, service is presumed invalid if postal

11   cancellation date or postage meter date is more than one day after date
of deposit for mailing in affidavit.

12

13   | Edward J. Wynne, Esq. | Attorneys for Plaintiff BENJAMIN |
14   | J.E.B. Pickett, Esq. | PAPARELLA |

Edward J. Wynne, Esq.
J.E.B. Pickett, Esq.
WYNNE LAW FIRM
100 Drakes Landing Road, Suite 275
Greenbrae, CA 94904
Telephone:  415.461.6400
Facsimile:  415.461.3900
ewynne@wynnelawfirm.com
Jebpickett@wynnelawfirm.com

Attorneys for Plaintiff BENJAMIN PAPARELLA

18

19       [ X ]  **FEDERAL:**  I declare that I am employed in the office of a member of
the Bar of this Court at whose direction this service was made.  Executed on June

20   14, 2010, at Irvine, California.

21

22   _____
              Jojo Nghiem

23

24

25

26

27

28